UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY
_____
                                :
OSCAR PRIOR RAMIREZ,            :
                                :
          Plaintiff,            :     Civ. No. 20-3887 (NLH) (EAP)
                                :
     v.                         :     OPINION
                                :
                                :
SWSP CUSTODY OFFICERS, et al.,  :
                                :
          Defendants.           :
                                :
_____:

APPEARANCES:

Charles Harry Landesman, Esq.
Law, Froelich & Landesman
90 Maria Drive
P.O. Box 474
Hillsdale, NJ 07642

     *Attorneys for Plaintiff*

Matthew J. Platkin, Attorney General of New Jersey
Eric Intriago, Deputy Attorney General
Office Of The Attorney General for the State of New Jersey
25 Market Street
PO Box 112
Trenton, NJ 08625

     *Attorneys for Defendant Administrator John Powell*

Thomas J. Pyle, Jr., Esq.
MacNeill O'Neill, Riveles & Spitzer LLC
240 Cedar Knolls Road
Suite 104
Cedar Knolls, NJ 07927

     *Attorneys for Defendants Lisa Mills, Sherita Latimore-
Collier, Christina Carman*

HILLMAN, District Judge

Plaintiff Oscar Prior Ramirez is proceeding on an amended complaint against Defendants John Powell, Administrator of South Woods State Prison ("SWSP") and SWSP Custody Officers.  Amended Complaint ("Am. Compl.") ECF No. 9.  Defendant Powell now moves for summary judgment on the amended complaint, ECF No. 52, and to seal certain exhibits, ECF No. 54.  Plaintiff opposes the summary judgment motion.  ECF No. 58.

For the reasons set forth below, the Court will grant both motions in part.

I.   BACKGROUND

Plaintiff is a convicted and sentenced state prisoner and has been incarcerated in SWSP since May 20, 2014.  Am. Compl. ¶ 1.  He uses a wheelchair and has a colostomy bag to help him use the bathroom.  "On or around October 12, 2018, Plaintiff was placed in ACSU cell 1029 in the administrative segregation unit, which is a disciplinary unit."  Defendant's Statement of Undisputed Material Facts ("DSOF"), ECF No. 52-2 ¶ 7.[1]

---

[1] These facts are derived from Defendant's Local Civil Rule 56.1 Statement of Undisputed Material Facts and the exhibits specifically referenced.  Plaintiff's "Statement of Facts," ECF No. 58 at 5, does not comply with Local Civil Rule 56.1 because it does not "address[] each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion . . . ." Local Civ. R. 56.1(a).  Accordingly, the Court adopts

2

"Plaintiff was placed [in] administrative segregation due to discipline he received from refusing to move cells on a prior occasion, receiving thirty-one days of administrative segregation."  Id. ¶ 8.  Plaintiff alleges that "ACSU cell 1029 was not handicap accessible and lacked handicap support for using the toilet" and that "he fell from transferring from his wheelchair to the toilet due to the lack of a handlebar."  Id. ¶¶ 9-10.  Plaintiff broke his ankle because of the fall.  Id. ¶ 11.  "The day of the fall, medical staff did not note the fall was life-threatening and noted 'no acute distress noted.'  The day after, Plaintiff was given an X-ray and placed in a cast a couple days later."  Id. ¶ 13 (quoting ECF No. 52-6 at 32).

Plaintiff submitted a grievance on October 21, 2018:

> while in this acsu I told the officer that I needed a
> handicap cell.  It was denied knowing that I'm a
> paraplegic, causing me [to] fall and sprain my ankle and
> still they have not taken this serious enough to provide
> me with adequate treatment and housing.  I informed the
> off that I needed to speak with a sgt. [and] he refused
> to allow me to speak with a supervisor.

ECF No. 52-6 at 21.  Luz Torres responded on October 22, 2018: "Your issues is being refer [sic] to the Custody Department for an investigation."  Id.  On October 30, 2018, Scot Chard responded: "Your issue is with the MEDICAL DEPARTMENT and you

---

Defendant's Rule 56.1 Statement because "facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted."  Hill v. Algor, 85 F. Supp. 2d 391, 408 n.26 (D.N.J. 2000); see also Local Civ. R. 56.1(a).

have to submit your complaint to them for your medical needs and
medical discrepancies.  As of 10/25/2018 you were transferred
from ACSU to Facility 1."  Id.  Plaintiff wrote back on November
3, 2018:

> I was transferred however it doesn't changes [sic] what
> happened to me at ACSU which I fractured my ankle,
> according to federal law and ADA, once you receive
> federal funding you have to comply with ADA, which you
> failed to do so causing unreasonable risk of harm to
> inmate in your custody which is also eighth amendment
> violation, for the foregoing reason please render a
> final resolution to this matter.

Id.  On November 14, 2018, Linda Linen responded: "You were
advised on 10/30/18 Your issue is with the MEDICAL DEPARTMENT
and you have to submit your complaint to them for your medical
needs and medical discrepancies.  As of 10/25/2018 you were
transferred from ACSU to Facility 1."  Id.

Plaintiff submitted a grievance to Defendant Powell on
November 16, 2018:

> Dear Mr. Powell,
>
> Sir, I am writing this in response to the response that
> I received which does not negate the fact that I was
> under your custody.  They should have prevented any
> unnecessary injury by placing me in a cell that was not
> properly equipped for handicapped people.
>
> The issues with the medical department are completely
> seperate [sic] from your responsibilities to ensure
> safety for inmates.

ECF No. 52-9 at 2.  Luz Torres responded on November 21, 2018:
"Your housing unit was appropriate for ADA accommodation."  Id.

4

Plaintiff appealed: "i would like to know what part of the cell in ACSU is appropriate for a handicap?  and who made this decision?"  Id.  Defendant Powell responded on November 29, 2018: "'Your housing unit was appropriate for ADA accommodation.'  Case Closed."  Id.

Plaintiff submitted another grievance to Defendant Powell on February 11, 2019:

> Even though your last response on 11-14-18 indicated I was moved from ACSU to Facility 1, I am still living with the physical and mental burden associated with being placed by Custody in an improperly equipped housing cell (cell #1029 in ACSU), which resulted in me breaking my ankle on 10-12-18.  None of this should have ever happened because I should never have been placed in ACSU cell #1029.

ECF No. 52-6 at 25.  Luz Torres responded on February 20, 2019: "This form do not [sic] contain SPECIFIC information.  Submit a new form with additional information."  Id.  Plaintiff responded:

> Please refer to my 10-21-18 grievance (Ref #18036980) and inquiry (Ref #18036981), both of which specifically state that I told the ACSU officer that I was a paraplegic and needed a handicapped equipped cell.  I was refused an opportunity to speak to a supervisory sergeant.  Not long after being placed in cell#1029, I fell and broke my ankle because the cell was not properly equipped to accommodate a physically handicapped wheelchair bound inmate.  Knowing that I was a paraplegic, why was I placed in cell#1029?  Why was I not allowed to speak to a sergeant?  Why was there not even an attempt to install support bars in the cell while I was there?  What were the results of the Custody Department Investigation referenced in the 10-22-18 response from Administration?

Id.  On March 4, 2019, Defendant Powell responded: "Please be advised you received a response from Mrs. Torres on 2/20/19, which stated 'This form do not contain SPECIFIC information. Submit a new form with additional information as requested." Id.

Plaintiff filed another grievance on February 13, 2019 asking for an investigation by the medical ombudsman into why he was "returned to the unsafe detention cell#1029 instead of being moved to a more appropriate cell in ECU [Extended Care Unit],[2] where detention protocols could still have been enforced." Id. at 30.  "Being placed back in an unsafe cell only risked further injury to my ankle. . . . I would hate to think that my previous complaints about inadequate medical supplies affected the decision making process." Id.  Mr. Thomas responded on March 14, 2019: "You did not meet criteria for ECU placement at that time.  You were seen on 2/26 for follow up with the orthopedic specialist who removed the cast.  No problems noted.  Prior to that, no recommendations were made by the specialist for any special housing arrangements." Id.  "Plaintiff filed a Notice

---

[2] In his June 10, 2022 deposition, Plaintiff described ECU as "like a hospital area, that when you are going out to the hospital, you're staying for a short time to recover." Plaintiff's Deposition ("Pla. Dep."), ECF No. 52-8 at 12:25 to 13:2.

of Tort claim for the October 12, 2018 incident on May 29,
2019." DSOF ¶ 21.[3]

Plaintiff filed his original complaint pro se on April 8,
2020. ECF No. 1. He filed the amended complaint on July 13,
2020. ECF No. 9. The amended complaint raised claims of
deliberate indifference to medical conditions, unconstitutional
conditions of confinement, violations of the Americans with
Disabilities Act ("ADA"), violations of the New Jersey Law
Against Discrimination ("NJLAD"), medical malpractice, and
intentional infliction of emotional distress. Id. at 12.
Counsel entered an appearance on Plaintiff's behalf on September
1, 2020. ECF No. 11. On June 2, 2022, Plaintiff settled with
Medical Defendants Lisa Mills, Sherita Latimore-Collier, and
Christina Carman and dismissed all claims against them. ECF No.
47 (amended Feb. 21, 2023, ECF No. 63).

II. STANDARD OF REVIEW

Summary judgment should be granted when the pleadings,
depositions, answers to interrogatories, admissions on file, and
affidavits show that there is no genuine dispute as to any
material fact and that the moving party is entitled to a
judgment as a matter of law. Fed. R. Civ. P. 56(c). A disputed

---

[3] Defendant cites to the "Certification of Peter Ramos" for this
claim but did not include the certification with his summary
judgment motion.

fact is material when it could affect the outcome of the suit under the governing substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Id. at 250.  The Court should view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor.  Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

Initially, the moving party must show the absence of a genuine issue concerning any material fact.  See Celotex Corp. v. Carrett, 477 U.S. 317, 323 (1986).  Once the moving party has satisfied its burden, the non-moving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment."  Anderson, 477 U.S. at 257.  "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla."  Hugh, 418 F.3d at 267 (citing Anderson, 477 U.S. at 251).

III. DISCUSSION

Plaintiff reached a settlement agreement with Medical Defendants Mills, Latimore-Collier, and Carman, leaving only his

claims against Defendant Powell and John Doe Custody Officers
and Medical Department remaining.[4]

A.   <u>Deliberate Indifference to Medical Needs</u>

Plaintiff alleges Defendant Powell was deliberately
indifferent to Plaintiff's medical needs "when [Plaintiff] was
placed in a prison cell that was not properly equipped for
handicapped inmates.  The prison guards placed plaintiff in this
cell despite having notice that plaintiff used a wheelchair and
was physically handicapped."  ECF No. 58 at 11.[5]  "As the
administrator of South Woods State Prison, [Defendant Powell]
oversaw the activities and supervised the work of the
Corrections Officers of the prison and the placing of inmates
into cells."  <u>Id.</u>

To state an Eighth Amendment Claim, a plaintiff must allege
facts indicating that defendants were deliberately indifferent

---

[4] Plaintiff has not identified or served the John Doe Defendants.

[5] Plaintiff filed all claims against Defendant Powell in both his
individual and official capacity.  Defendant Powell is immune
from suit to the extent this claim is raised against him in his
official capacity.  The Eleventh Amendment to the United States
Constitution provides that, "[t]he Judicial power of the United
States shall not be construed to extend to any suit in law or
equity, commenced or prosecuted against one of the United States
by citizens of another State, or by Citizens or Subjects of any
Foreign State."  U.S. Const. amend. XI.  A suit against a public
official "'in his or her official capacity is not a suit against
the official but rather is a suit against the official's office
. . . .'"  <u>Printz v. United States</u>, 521 U.S. 898, 930–31 (1997)
(quoting <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71
(1989)).

to his or her serious medical need.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  To accomplish this, "a plaintiff must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'"  Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (alteration in original)).

Defendant Powell argues there was "no serious medical need because Plaintiff's fracture was treated the following day by x-ray and a cast was placed on Plaintiff's leg a couple of days later."  ECF No. 52-1 at 14.  "There is no evidence the leg injury was life threatening or created some serious risk of harm to Plaintiff nor any evidence Powell delayed or prevented Plaintiff from receiving medical care."  Id.  A medical need is serious where it "has been diagnosed by a physician as requiring treatment or is . . . so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (citations omitted).  Plaintiff's disability seemingly would qualify as a serious medical need, and a broken ankle arguably fits this requirement.  See Nock v. Taylor, No. 05-1020, 2005 WL 1206844, at *3 (D.N.J. May 20, 2005) ("[A] broken ankle is a serious medical need . . . .").  Regardless,

10

Plaintiff has not shown that there is a disputed issue of fact on the deliberate indifference element.

The Third Circuit has found deliberate indifference "'where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.'" Parkell v. Danberg, 833 F.3d 313, 337 (3d Cir. 2016) (quoting Rouse, 182 F.3d at 197). As a supervisor, Defendant Powell "may not be held liable for the unconstitutional conduct of [his] subordinates under a theory of respondeat superior." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). "Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)) (alteration in original). Plaintiff must produce evidence of "a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the

11

unreasonable risk was created; (3) the supervisor was
indifferent to that risk; and (4) the injury resulted from the
policy or practice." Beers-Capitol v. Whetzel, 256 F.3d 120,
134 (3d Cir. 2001) (citing Sample v. Diecks, 885 F.2d 1099, 1118
(3d Cir. 1989)).

Plaintiff has not produced any such evidence.  The record
before the Court indicates that Plaintiff did not inform
Defendant Powell of his concerns about Cell 1029's
appropriateness until after his injury, and he admitted in his
deposition that he had never spoken directly to Defendant
Powell.  Pla. Dep. at 39:25 to 40:2.  Plaintiff filed his
grievances after his fall, so the grievances do not show that
Defendant Powell was aware of the situation beforehand but was
indifferent to any risk.  Plaintiff received treatment for his
injury, and "[c]orrectional defendant-administrators who are not
themselves physicians cannot 'be considered deliberately
indifferent simply because they failed to respond directly to
the medical complaints of a prisoner who was already being
treated by the prison doctor.'"  Diaz v. Warden Lewisburg USP,
630 F. App'x 148, 151 (3d Cir. 2015) (quoting Durmer v.
O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993)).

The Court must grant summary judgment against any party
"who fails to make a showing sufficient to establish the
existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial."

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

Accordingly, Defendant Powell is entitled to judgment as a

matter of law on Plaintiff's deliberate indifference to medical

needs claim.

B.   <u>Unconstitutional Conditions of Confinement</u>

Plaintiff's second claim against Defendant Powell asserts

that Defendant Powell subjected Plaintiff to unconstitutional

conditions of confinement because "[Defendant Powell] also has

knowledge of the grievances filed by the Plaintiff concerning

Plaintiff being locked up in an appropriate cell.  He further

failed to address Plaintiff's issues therefore Plaintiff had to

suffer the pain of a broken ankle."  Am. Compl. at 13.[6]  <u>Id.</u>

"The Constitution 'does not mandate comfortable prisons,'

but neither does it permit inhumane ones and it is now settled

that 'the treatment a prisoner receives in prison and the

conditions under which he is confined are subject to scrutiny

under the Eighth Amendment.'"  <u>Farmer v. Brennan</u>, 511 U.S. 825,

832 (1994) (quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 349 (1981);

<u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993)).  "The Eighth

Amendment imposes duties on prison officials to 'provide humane

---

[6] Defendant Powell is immune from suit to the extent this claim
is brought against him in his official capacity.  <u>See</u> <u>supra</u> note
5.

conditions of confinement' and 'ensure that inmates receive
adequate food, clothing, shelter, and medical care.'" Barndt v.
Wenerowicz, 698 F. App'x 673, 676–77 (3d Cir. 2017) (quoting
Farmer, 511 U.S. at 832).  "To establish an Eighth Amendment
conditions of confinement claim, [Plaintiff] must show that (1)
the deprivation alleged was objectively, 'sufficiently serious'
such that the prison officials' acts or omissions resulted in
the denial of 'the minimal civilized measure of life's
necessities'; and (2) that the prison officials exhibited a
'deliberate indifference' to his health and safety." Id. at 677
(quoting Farmer, 511 U.S. at 834).

Plaintiff argues in opposition to Defendant's motion that
"Defendant Powell should have known that plaintiff, a
handicapped inmate was transferred to Administrative
Segregation, commonly known as Ad Seg, because he refused an
assignment to a non-handicapped cell in general population."
ECF No. 58 at 9.  However, "[t]he knowledge element of
deliberate indifference is subjective, not objective knowledge,
meaning that the official must actually be aware of the
existence of the excessive risk; it is not sufficient that the
official should have been aware." Beers-Capitol v. Whetzel, 256
F.3d 120, 133 (3d Cir. 2001).

"[S]ummary judgment is essentially 'put up or shut up' time
for the non-moving party: the non-moving party must rebut the

14

motion with facts in the record and cannot rest solely on
assertions made in the pleadings, legal memoranda, or oral
argument." Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195,
201 (3d Cir. 2006).  Plaintiff's opposition to the summary
judgment motion boils down to "Defendant Powell as the
administrator of South Woods State Prison oversees and
supervise[s] the corrections officers."  ECF No. 58 at 9.  He
asserts that "there are substantial questions of fact that need
to be resolved by a jury," including "[w]hat knowledge did
defendant Administrator Powell have with respect to the
placement of plaintiff in a non handicapped cell and when did he
acquire this knowledge?" and "Did Administrator Powell know that
plaintiff was a handicapped individual who used a wheelchair?"
ECF No. 58 at 8.  These are questions Plaintiff should have
asked Defendant Powell during discovery.  Plaintiff has not
produced evidence, such as deposition testimony or a description
of Defendant Powell's oversight duties, that would allow a
factfinder to conclude Defendant Powell personally knew that
Plaintiff raised objections to his general housing assignment
and subsequent disciplinary assignment due to the lack of
accommodations.

      Plaintiff opposition to Defendant's motion does meet his
burden of proof on whether Defendant Powell knew of and

disregarded an excessive risk to Plaintiff's safety.  The Court

will grant summary judgment to Defendant Powell on this claim.

C.   Violations of the ADA and NJLAD

Count Three of the Amended Complaint alleges violations of

the ADA:

> Administrator John Powell is responsible for not
> complying with statutes and requirements of ADA.  The
> law is clear when the institution receives federal funds
> to ensure the safety of disabled inmates.  Therefore,
> Administrator John Powell failed to comply with the
> statutes established by law.  John Powell has knowledge
> of the Plaintiff being placed in an inappropriate cell.
> Complying with the Americans with Disabilities Act is
> not just to say that housing is appropriate for disabled
> inmates, the violation is only when handicapped inmates
> are kept in inappropriate cells, as has been
> continuously mentioned by the Plaintiff, that he was
> placed in an inappropriate cell.  1029-AC SU.  The
> Plaintiff was made to stay in that cell until his charge
> was complete.
>
> . . . .
>
> After Plaintiff obtained multiple fractures in his left
> ankle, medical department as well as Administrator John
> Powell failed their responsibilities.

ECF No. 9 at 14.  Such a claim may only be brought against

Defendant Powell in his official capacity.  See Kokinda v.

Pennsylvania Dep't of Corr., 779 F. App'x 944, 949 (3d Cir.

2019) (dismissing plaintiff's "claims for individual damages

liability under Title II of the ADA fail for the simple reason

that there is no such liability."); Dews v. Link, No. 18-4285,

2021 WL 2223795, at *3 (E.D. Pa. June 2, 2021) ("Even though

individuals cannot be sued in their individual capacities for

16

money damages under Title II of the ADA or the Rehabilitation
Act, they may be sued in their official capacities."").
Accordingly, the real party in interest is SWSP.  Kentucky v.
Graham, 473 U.S. 159, 165 (1985)) ("[A]n official-capacity suit
is, in all respects other than name, to be treated as a suit
against the entity.").

        Under Title II of the ADA, "no qualified individual with a
disability shall, by reason of such disability, be excluded from
participation in or be denied the benefits of the services,
programs, or activities of a public entity, or be subjected to
discrimination by any such entity."  42 U.S.C. § 12132.  To
establish a violation of Title II, Plaintiff must prove: "(1)
that he is a qualified individual; (2) with a disability; (3)
who was excluded from participation in or denied the benefits of
the services, programs, or activities of a public entity, or was
subjected to discrimination by any such entity; (4) by reason of
his disability."  Dahl v. Johnston, 598 F. App'x 818, 819-20 (3d
Cir. 2015) (citing 42 U.S.C. § 12132); see also Bowers v. Nat'l
Collegiate Athletic Ass'n, 475 F.3d 524, 553 n.32 (3d Cir.
2007), amended on reh'g (Mar. 8, 2007).  Defendant Powell does
not appear to argue that Plaintiff is not a qualified individual
with a disability; therefore, the Court considers these elements
to have been satisfied.

"State prisons fall squarely within the statutory definition of 'public entity,' which includes 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'" Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998) (quoting 42 U.S.C. § 12131(1)(B)). "[T]he phrase 'service, program, or activity' under Title II . . . is 'extremely broad in scope and includes anything a public entity does.'" Furgess v. Pennsylvania Dep't of Corr., 933 F.3d 285, 289 (3d Cir. 2019). "[] Department of Justice guidance on Title II regulations explicitly refers to a prison's provision of hygiene as being included under the statute's purview." Id. "Specifically, the DOJ explains that corrections systems are unique facilities under Title II because inmates cannot leave, and thus prisons must address the needs of inmates with disabilities by providing 'accessible toilet and shower facilities, devices such as a bed transfer or a shower chair, and assistance with hygiene methods for prisoners with physical disabilities.'" Id. (quoting 28 C.F.R. pt. 35, App. A, at 663 (2017)). The Court finds that a reasonable factfinder could conclude that the provision of a toilet is a service, program, or activity within the meaning of Title II.

Defendant Powell argues "there is no evidence Plaintiff was placed in ACSU cell 1029 as discrimination for his disability, which is necessary for Plaintiff to make out these claims." ECF

18

No. 52-1 at 18.  "Plaintiff first wrote directly to Powell
regarding the fall incident on November 16, 2018, well after
Plaintiff's October 25, 2018 departure from ACSU cell 1029 and
the October 12, 2018 fall.  Powell responded on November 29,
2018; this was a month after Plaintiff had already left ACSU
cell 1029."  Id. (internal citations omitted).  "Most
importantly, Plaintiff was not placed in ACSU cell 1029 as
discrimination; Plaintiff was placed in ACSU cell 1029 because
of his disciplinary sanction for refusing to move cells at an
earlier date."  Id.

There are disputed issues of fact as to whether Plaintiff
was denied a service, program, or activity by reason of his
disability.  "Under Title II, the failure of a public entity to
provide disabled persons with reasonable modifications
constitutes discrimination within the meaning of the [ADA]."
Muhammad v. Dep't of Corr., 645 F. Supp. 2d 299, 313 (D.N.J.
2008).  The record reflects that Plaintiff refused his housing
assignment because of complications from his colostomy bag.
Exhibit E at 12.  See also ECF No. 52-7 at 17 ("[]I was being
forced to move to another area wither having my essential and
mandated supplies that assist my wounds/injury and
disability.").  Despite his "face sheet" having a medical alert
for "NEED FOR WHEEL CHAIR OR OTHER DEVICE" and "WHEELCHAIR –
PERMANENT," Exhibit D at 2, his preliminary incident report

19

states "[t]his inmate is not currently listed as special needs
status at this time."  Exhibit E at 12.  See also Exhibit E at
10 (disciplinary special needs form prepared by Sco. T. Hickman
with "no" written in special needs column).  Plaintiff was then
placed in Cell 1029 with no handrails over his objection.  See
Pla. Dep. at 15:19-23 ("[W]hen I was going to detention, I
clearly mentioned to the officer that the cell I was going into
was not designed for me . . . . It's not a cell designed for
me.").

     Defendant's assertion that Plaintiff was placed into
administrative segregation because of his disciplinary charge is
insufficient.  The Third Circuit rejected a similar argument in
Furgess v. Pennsylvania Department of Corrections, 933 F.3d 285
(3d Cir. 2019).  There, defendants argued that plaintiff had
been "deprived of a shower because his own misconduct landed him
in the RHU, which lacked accessible shower facilities, not
because the PDOC intentionally discriminated against him on the
basis of his disability."  Id. at 291.  The Third Circuit found
this argument "unconvincing."  Id.  "[T]he sole cause of
Furgess's deprivation of a shower was his disability.  The
PDOC's argument to the contrary fails because it conflates the
alleged discriminatory action — failure to accommodate by not
making the RHU showers handicapped-accessible — with the
causation element of Furgess's claims."  Id. (footnote omitted).

Defendant's argument fails for the same reason.  "A prisoner's misconduct does not strip him of his right to reasonable accommodations, and a prison's obligation to comply with the ADA . . . does not disappear when inmates are placed in a segregated housing unit, regardless of the reason for which they are housed there."  Id.  Here, as in Furgess, the reason Plaintiff was placed into administrative segregation "is irrelevant."  Id.  "As the ADA's regulations make clear, [SWSP's] failure to equip [Cell 1029] with accessible [toilets] does not excuse the prison from its duty to reasonably accommodate prisoners with disabilities."  Id.

"[I]ntentional discrimination . . . in this Circuit, may be satisfied by a showing of deliberate indifference."  Id. at 292. Plaintiff "must present evidence that shows both: (1) knowledge that a federally protected right is substantially likely to be violated" i.e., knowledge that the failure to provide Plaintiff with an accessible toilet likely violated his right to reasonable accommodations of his disability, "and (2) failure to act despite that knowledge."  S.H. ex rel. Durrell v. Lower Merion Sch. Dist., 729 F.3d 248, 265 (3d Cir. 2013) (emphasis omitted).  From the evidence in the record, a reasonable factfinder could conclude that that SWSP knew about Plaintiff's disability and his requests for an accessible toilet.  A reasonable factfinder could also conclude that SWSP placed

21

Plaintiff into a non-accessible cell despite his requests, which
ultimately lead to his injury, and that SWSP's failure to
provide him an accessible toilet was likely to violate his right
to a reasonable accommodation of his disability.  Accordingly,
there are disputed issues that prevent summary judgment on this
claim.

Plaintiff raised a claim under NJLAD in addition to his ADA
claim.  NJLAD "relies on the same analytical framework as the
ADA."  Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524,
536 n.12 (3d Cir. 2007).  See also Small v. Lanigan, 58 NDLR P
113, 2019 WL 145628, at *4 (D.N.J. Jan. 9, 2019); D.G. v.
Somerset Hills Sch. Dist., 559 F. Supp. 2d 484, 502 (D.N.J.
2008).  The Court will deny summary judgment on Plaintiff's
NJLAD claims for the same reason as his ADA claims.

D.   Tort Claims

Defendant Powell also moves for summary judgment on
Plaintiff's intentional infliction of emotional distress claim.[7]
Defendant Powell asserts that Plaintiff failed to file a timely
notice of claim form.  Defendant Powell cites to the
"Certification of Peter Ramos" for this claim, ECF No. 52-1 at
20, but did not include the certification with his summary
judgment motion.  However, the Court need not address whether

---

[7] The Court has supplemental jurisdiction over Plaintiff's state
law claim.  28 U.S.C. § 1367(a).

the tort claim notice was timely filed because Defendant Powell

is entitled to judgment as a matter of law on the merits of the

claim.

Defendant Powell is immune from suit on this claim in his

official capacity.  "[T]he New Jersey Tort Claims Act does not

constitute waiver of immunity from suit in federal court; the

statute reflects a limited waiver only of the State's immunity

from suit in state court."  Allen v. New Jersey State Police,

974 F.3d 497, 505 (3d Cir. 2020) (emphasis omitted).  For his

IIED claim against Defendant Powell in his individual capacity,

Plaintiff must prove:

> the defendant acted intentionally or recklessly, both in
> doing the act and producing emotional distress; the
> conduct was so outrageous in character and extreme in
> degree as to go beyond all bounds of decency; the
> defendant's actions were the proximate cause of the
> emotional distress; and the distress suffered was so
> severe that no reasonable person could be expected to
> endure it.

Turner v. Wong, 832 A.2d 340, 347 (N.J. Super. Ct. App. Div.

2003) (citing Buckley v. Trenton Sav. Fund Soc'y, 544 A.2d 857

(N.J. 1988)).  "The standard is an objective one.  The

defendant's conduct must be 'sufficiently severe to "cause

genuine and substantial emotional distress or mental harm to

average persons."'"  Id. at 348 (quoting Taylor v. Metzger, 706

A.2d 685, 697 (N.J. 1998)).  "The average person, of course,

must be one similarly situated to the plaintiff."  Id.

23

Plaintiff has not submitted evidence to this Court that
would allow a reasonable factfinder to conclude Defendant
Powell's actions were the proximate cause of Plaintiff's
emotional distress.  Plaintiff asserts: "[P]laintiff broke his
left ankle when he fell of the toilet in the cell.  As a result
of this fall, plaintiff alleges that he had severe emotional
distress by being forced to live in a cell that did not
accommodate his needs as a handicapped person."  ECF No. 58 at
18.  As the Court noted previously, the undisputed record
indicates that Plaintiff did not file his grievances with
Defendant Powell until after his injury and after Plaintiff had
already been transferred out of Cell 1029.  The Court will grant
summary judgment to Defendant Powell on this claim.

E.   Qualified Immunity

Defendant Powell argues that he is entitled to qualified
immunity because "there is no clearly established right for an
incarcerated person to have a handle bar near a restroom or to
have prison officials modify a cell in way Plaintiff requested."
ECF No. 52-1 at 22.

"[O]fficers are entitled to qualified immunity ... unless
(1) they violated a federal statutory or constitutional right,
and (2) the unlawfulness of their conduct was 'clearly
established at the time.'"  D.C. v. Wesby, 138 S. Ct. 577, 589
(2018) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)).

24

The first prong of the analysis "asks whether the facts, [t]aken in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a [federal] right[.]" Tolan v. Cotton, 572 U.S. 650, 655-56 (2014) (internal quotation marks and citations omitted) (alterations and omissions in original).   The Court has awarded summary judgment to Defendant Powell on Plaintiff's constitutional and state tort claims; therefore, it is unnecessary to address Defendant's qualified immunity argument beyond noting that Plaintiff has not shown a violation of a constitutional right.

Qualified immunity does not apply to official-capacity claims.  See Kentucky v. Graham, 473 U.S. 159, 167 (1985) ("In an official-capacity action, these defenses are unavailable. The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, qua entity, may possess, such as the Eleventh Amendment."); I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist., 842 F. Supp. 2d 762, 778 (M.D. Pa. 2012) ("The doctrine of qualified immunity shields officials acting and sued in their individual capacities."). Accordingly, Defendant Powell may not assert qualified immunity as a defense to Plaintiff's ADA claim against him in his official capacity.

F.   <u>Motion to Seal</u>

Defendant Powell also moves to seal certain exhibits to his summary judgment motion.  ECF No. 54.  "It is well-settled that there exists, in both criminal and civil cases, a common law public right of access to judicial proceedings and records.  The public's right of access extends beyond simply the ability to attend open court proceedings.  Rather, it envisions a pervasive common law right to inspect and copy public records and documents, including judicial records and documents."  <u>In re Cendant Corp.</u>, 260 F.3d 183, 192 (3d Cir. 2001) (internal citations and quotation marks omitted).  A party seeking to seal portions of the judicial record from public view bears party "bears the heavy burden of showing that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure."  <u>Millhouse v. Ebbert</u>, 674 F. App'x 127, 128 (3d Cir. 2017) (per curiam) (internal quotation marks and citations omitted).  In deciding a motion to seal, the Court considers:

(a) the nature of the materials or proceedings at issue;

(b) the legitimate private or public interest which warrants the relief sought;

(c) the clearly defined and serious injury that would result if the relief sought is not granted;

(d) why a less restrictive alternative to the relief sought is not available;

26

        (e) any prior order sealing the same materials in the
            pending action; and

        (f) the identity of any party or nonparty known to be
            objecting to the sealing request.

L. Civ. R. 5.3(c)(3).

        Plaintiff's remaining claim alleges that Defendants
violated the ADA by putting him into a cell that did not have
proper accommodations for his disability.  Defendant Powell
seeks to seal Plaintiff's Department of Corrections
"facesheet/progress notes," Exhibit D, and Plaintiff's
disciplinary records, Exhibit E.  Defendant Powell argues that
"the individual interest warranting relief is Plaintiff's
privacy interest in preserving the confidentiality of his
personal DOC inmate records."  ECF No. 54-1 at 2.  "In addition,
the clearly defined and serious injury that would result if
relief is not granted is Plaintiff's DOC inmate records and
certain sensitive personal information would become publicly
accessible."  Id.

        Plaintiff has a right to have his complaint adjudicated in
a public process, and the public has a right to information
about how state prisons accommodate inmates with disabilities.
"The public's interest is particularly legitimate and important
where, as in this case, at least one of the parties to the
action is a public entity or official."  Pansy v. Borough of
Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994).  "'Broad

                                27

allegations of harm, unsubstantiated by specific examples or articulated reasoning,' do not support a good cause showing." Id. (quoting Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986)).  Plaintiff's prison records contain information directly pertaining to his claim, such as the notification on his "facesheet" that he has a medical alert for "NEED FOR WHEEL CHAIR OR OTHER DEVICE" and "WHEELCHAIR – PERMANENT" and the contradictory claim on his preliminary incident report that states "[t]his inmate is not currently listed as special needs status at this time."  Exhibit D at 2; Exhibit E at 12.  These documents provide evidence that prison officials were aware of Plaintiff's disability but did not accommodate him.

The exhibits do contain sensitive information, such as Plaintiff's full birthdate, the name and full address of his emergency contact, and progress notes unrelated to his current claims, but the Court is not persuaded that it is impossible to redact the sensitive and irrelevant information from the exhibits.  The Court will grant the motion to seal to the extent that the unredacted versions will remain under seal, but the parties will be directed to meet and confer to agree upon redactions for the exhibits.  The redactions will keep the sensitive personal information private while balancing public access to judicial records.

28

IV.   CONCLUSION

For the reasons set forth above, the Court will grant
Defendant's motion for summary judgment in part.  The motion to
seal will be granted conditioned upon the submission of redacted
exhibits.

An appropriate Order follows.


Dated: March 15, 2023              s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.